UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Paul Koenig,   Case No. 15-cv-1533 (PAM/JSM)

                Plaintiff,

v.   **MEMORANDUM AND ORDER**

The Bank of New York Mellon as Trustee
for the certificate holders CWALT,
Alternative Loan Trust 2006-9TI Mortgage
Pass-through Certificates, Series 2006-9TI;
and Mortgage Electronic Registration
Systems, Inc.,

                Defendant.
_____

This matter is before the Court on the Bank's Motion to Dismiss. For the reasons that follow, the Court grants the Motion.

**BACKGROUND**

As a last resort, Paul Koenig brings this pro se action against The Bank of New York Mellon and Mortgage Electronic Registration Systems, Inc. (MERS) in an attempt to save his home from foreclosure.[1]

In 2004, Koenig and his wife bought their home in Afton, Minnesota. (Goerlitz Aff. (Docket No. 9) Ex. 1.)[2] Then in 2006, they obtained a loan from Countrywide Home

---

[1] Koenig's Complaint was filed with this Court on March 18, 2015, but he has not yet served MERS with the Complaint. Under the rules, he has 120 days after the Complaint is filed to serve MERS—or here, July 16, 2015. See Fed. R. Civ. P. 4(m). If he does not serve MERS by that date, the Court will dismiss the Complaint as against MERS.

[2] To supplement the Complaint and its exhibits, the Bank has submitted an affidavit with four exhibits—copies of the relevant warranty deed, mortgage, assignment of mortgage,

Loans, Inc. for $1.9 million. (Compl. (Docket No. 1, Ex. 1) ¶ 5, Ex. 3; Goerlitz Aff. Ex. 2.) As part of the loan transaction, they signed both a note promising to repay the loan and a mortgage securing the loan with the home. (Id.) Countrywide assigned the mortgage to MERS, and MERS assigned the mortgage to the Bank. (Compl. ¶¶ 6-7, Exs. 1, 3; Goerlitz Aff. Ex. 3.) Residential Credit Solutions, Inc. (RCS) serviced the loan. (Compl. ¶ 9, Ex. 3.)

In 2009, Koenig defaulted on the loan. (Id. Ex. 2.) Two years later, he filed for Chapter 7 bankruptcy and received a discharge of the debt. (Id. ¶ 8, Ex. 4.) The Bank initiated a foreclosure by advertisement (Goerlitz Aff. Ex. 4), and notified Koenig that the foreclosure sale would occur on August 7, 2014 (Compl. Ex. 3). At the foreclosure sale, the Bank bought the property. (Goerlitz Aff. Ex. 4.) Koenig and his wife appear to have lived in the home since, without making any mortgage or other payments.

Koenig then filed a pro se Complaint against the Bank and MERS, asking the Court to invalidate the foreclosure sale, direct the deletion of all accounts related to the loan from his credit reports, and award him title to the property. (Compl. ¶¶ 1-4.) In support of his requested relief, Koenig asserted seven claims:

1. "Defendant Relinquished Its Rights": MERS, which was listed as the mortgagee on the notice of the foreclosure sale, relinquished its right to

---

and sheriff's certificate of foreclosure sale—all of which were recorded. The Court may consider these additional exhibits in deciding this Motion because they are public records. See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (explaining that, when deciding a motion to dismiss for the failure to state a claim, a court "generally must ignore materials outside the pleadings, but it may consider . . . materials that are part of the public record" (quotation omitted)).

foreclose on the mortgage when it assigned the mortgage to the Bank (id. ¶¶ 18-20);

2. "Fraud and Misrepresentation": MERS, though it held the mortgage on the property, did not have the authority to foreclose on the mortgage because it did not prove at the time that it held the corresponding note (id. ¶¶ 21-26);

3. "Violation of Fair Debt Collection Practices Act": RCS did not respond to Koenig's letter demanding information on the loan and disputing its validity, thereby barring RCS from reporting loan data to credit bureaus and Defendants from proceeding with the foreclosure (id. ¶¶ 27-35);

4. "Incorrect Data": Countrywide and RCS continued to collect on the loan and report it to credit bureaus after it was discharged in bankruptcy, thus causing the notice of the foreclosure sale to indicate an incorrect redemption amount (id. ¶¶ 36-39);

5. "Trespass": The process server trespassed on Koenig's property when serving him with the notice of the foreclosure sale (id. ¶¶ 40-47);

6. "Violation of Automatic Bankruptcy Stay": Countrywide and RCS continued to report the loan to credit bureaus as verified and Defendants continued to report the mortgage to credit bureaus as foreclosed, even though the debt was discharged in bankruptcy (id. ¶¶ 48-52); and

7. "Defendant Precluded Commencing from Sale": Because the Bank scheduled a foreclosure sale in 2011 against the same property and did not properly cancel that sale, and because Koenig attended the canceled sale

and purportedly made a $1 bid for the property, the foreclosure sale in 2014 was invalid and the property should go to Koenig (id. ¶¶ 53-56).

The Bank now moves to dismiss the Complaint, arguing that none of Koenig's myriad claims warrant the relief he seeks.

**DISCUSSION**

To survive a motion to dismiss for the failure to state a claim, a complaint must plead enough facts to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 8(a)(2), 12(b)(6). A claim is plausible when the plaintiff alleges facts that allow the Court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Though the plausibility standard does not impose a probability standard requiring "detailed factual allegations," it mandates more than a possibility standard tolerating sheer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. When evaluating a motion to dismiss, the Court must accept factual allegations in the complaint as true, Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012), but it need not give effect to those allegations that simply assert legal conclusions, McAdams v. McCord, 584 F.3d 1111, 1113 (8th Cir. 2009).

"While courts liberally construe pro se complaints, pro se litigants must still allege sufficient facts to state a plausible claim for relief." Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013). Even after construing Koenig's Complaint liberally and

4

accepting its factual allegations as true, the Court concludes that his seven claims do not compel his requested relief.

The first claim—MERS relinquished its right to foreclose on the mortgage because it assigned the mortgage to the Bank—confuses MERS's role in the foreclosure. Koenig correctly notes that MERS is listed as the "MORTGAGEE" on the notice of the foreclosure sale (Goerlitz Aff. Ex. 4), and that MERS assigned the mortgage to the Bank before the sale (id. Ex. 3). But Koenig incorrectly ignores that the notice also indicates the "ASSIGNMENT OF MORTGAGE" to the Bank and makes clear that the law firm of Shapiro & Zielke, LLP was pursuing foreclosure on behalf of the Bank. (Id. Ex. 4.) Though MERS may have been the nominal mortgagee, it transferred its interest in the mortgage to the Bank and the Bank, within its rights, initiated foreclosure proceedings. This claim does not call into question the validity of the foreclosure sale.

The second claim—MERS lacked the authority to foreclose on the mortgage because it did not hold both the mortgage and the note—relies on the classic, yet baseless, "show me the note" theory. Show-me-the-note claims, which assert that the foreclosure of a mortgage is invalid if the note and mortgage are held by different entities, are frivolous in Minnesota. Welk v. GMAC Mortgage, LLC, 850 F. Supp. 2d 976, 980-87 (D. Minn. 2012) (Schiltz, J.) (meticulously explaining that all courts to have addressed the issue "have held—clearly, repeatedly, and recently—that, under Minnesota law, the entity that holds the mortgage can foreclose on the mortgage even if that entity does not also hold the note"). Koenig insists that his claim is not premised on the show-me-the-note theory, but his briefing reveals otherwise. (See Koenig's Resp. Br. (Docket

5

No. 14) 4 ("It is Plaintiff's position that the Defendant was not the holder or assignee of the note at the time they commenced foreclosure.").)[3] Nor does this claim warrant invalidating the foreclosure sale.

The third claim—RCS violated the Fair Debt Collection Practices Act (FDCPA) by not responding to his letter disputing the validity of the loan—asks for relief that the FDCPA does not allow. Assuming this claim has any merit, the FDCPA authorizes only damages, costs, and reasonable attorney's fees for noncompliance with its provisions. See 15 U.S.C. § 1692k. Thus, a claim alleging an FDCPA violation cannot affect a foreclosure sale or a credit report.

The fourth and sixth claims—although the debt was discharged in bankruptcy, Countrywide and RCS continued to collect on the loan, report it to credit bureaus as verified, and report the mortgage to credit bureaus as foreclosed—distort the effect of the discharge. While a bankruptcy discharge relieves a mortgagor's personal liability to pay the debt, it does not extinguish either the debt itself or the mortgagee's right to collect on the debt through foreclosure. Harmon v. U.S. Through Farmers Home Admin., 101 F.3d 574, 579 (8th Cir. 1996). Absent voluntary release or avoidance by court, the mortgage survives bankruptcy and remains enforceable. In re WEB2B Payment Solutions, Inc., 488 B.R. 387, 391 (B.A.P. 8th Cir. 2013). So although Koenig received a discharge of the debt underlying the mortgage, the discharge does not bar the foreclosure on the

---

[3] At the hearing on this matter, Koenig presented a variant of this claim, contending that his real concern is that no one proved to him that they had the authority to foreclose on the mortgage. As already discussed, however, the foreclosure notice accurately lists the Bank as the valid assignee of the mortgage and the party with the power to foreclose on the mortgage.

mortgage or the reporting of it to credit bureaus, as Koenig claims. If Koenig wants to stay in his home, he must reinstate the debt and resume payments.

The fifth claim—the process server trespassed on Koenig's property when serving him with foreclosure documents—does not render the foreclosure notice defective. For personal service of the notice of a foreclosure sale to be effective in Minnesota, the owner of the mortgaged property need not "physically accept the documents from the process server." Walsh v. U.S. Bank, N.A., 851 N.W.2d 598, 606 (Minn. 2014). Instead, "if the process server and the [owner] are within speaking distance of each other, and such action is taken as to convince a reasonable person that personal service is being attempted, service cannot be avoided by physically refusing to accept the [documents]." Nielsen v. Braland, 119 N.W.2d 737, 739 (Minn. 1963). In the Complaint, Koenig alleges that when the process server approached the property, he informed that the process server was trespassing and that he was not accepting service. (Compl. ¶¶ 44-45.) The process server then left the foreclosure documents on a planter box at the property's front entrance. (Id. ¶ 46.) Under Koenig's own allegations, the process server effectively served him with the foreclosure notice, regardless of his attempt to refuse service or his asserted claim of trespass.

The final claim—the Bank did not properly cancel a previously scheduled foreclosure sale in 2011, at which Koenig purportedly made a $1 bid for the property— attempts to engraft the formal procedures for postponement of a foreclosure sale onto a cancellation of that sale. The Complaint makes clear that Koenig believes the Bank did not properly cancel the 2011 foreclosure sale because it did not adhere to the statutory

requirements for postponing a foreclosure sale. (See Compl. ¶ 54.) See also Minn. Stat. § 580.07, subd. 1 (directing that a mortgagee wishing to postpone a foreclosure sale to publish notice of the postponement and the rescheduled date of the sale, if known, and send by mail the same to the mortgagor, along with the date the mortgagor must vacate the property). But the Bank did not postpone the 2011 foreclosure sale; it canceled the sale. As a result, the Bank was not obligated to comply with the statutory requirements for the postponement of a foreclosure sale, and Koenig's final claim neither invalidates the 2014 foreclosure sale nor justifies giving the property to him.

**CONCLUSION**

In the end, Koenig wants to keep his home for free and wipe clean his credit history. But he is not entitled to that relief. None of his multitude of claims—even when construed liberally—permit the Court to invalidate the foreclosure sale, direct the deletion of all accounts related to the loan from his credit reports, or award him title to the property. He therefore failed to state a plausible claim for relief. Accordingly, **IT IS HEREBY ORDERED** that:

1. The Bank's Motion to Dismiss (Docket No. 6) is **GRANTED**; and
2. Koenig's Complaint (Docket No. 1) is **DISMISSED** with prejudice as against the Bank.

Dated: July 14, 2015

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge

8